**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**UNITED STATES OF AMERICA**

**v.**                                                          **Crim. Action No. 19-292-5 (JDB)**

**DARREN PILES,**

**Defendant.**

---

## MEMORANDUM OPINION & ORDER

Defendant Darren Piles moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mot. for Compassionate Release ("Release Mot.") [ECF No. 266].  Piles is thirty years old and currently incarcerated at Federal Correctional Institution Fort Dix ("FCI Fort Dix").  He has served approximately eleven months of a twenty-four-month sentence for conspiracy to distribute cocaine.  See Sentence Monitoring Computation Data [ECF No. 267-1].  His projected release date is January 8, 2022, but he now argues that his desire to care for his children and his ill father constitute extraordinary and compelling reasons for his release.  Release Mot. at 5.  In his request to the warden of his facility, Piles also raised his medical conditions and the COVID-19 outbreak at FCI Fort Dix as reasons for release.  Id. at 15.  The government opposes the motion, arguing that Piles has "not established an extraordinary and compelling reason for his release" or that "he is no longer a danger to the community."  See Gov't's Opp'n to Def.'s Pro Se Mot. for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Gov't's Opp'n") [ECF No. 267] at 1.  For the reasons explained below, the Court agrees with the government and will deny Piles's motion for release.

Under the First Step Act of 2018, a court may, upon motion of the Bureau of Prisons ("BOP") or a defendant, reduce a defendant's term of imprisonment if, "after considering the

1

factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," it concludes that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  "As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)."  United States v. Demirtas, Crim. A. No. 11-356 (RDM), 2020 WL 3489475, at *1 (D.D.C. June 25, 2020).  And a court may consider a defendant's motion for reduction only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring [such] a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

To start, it is not clear that Piles has met the statutory exhaustion requirement with respect to the family circumstances claim that forms the basis of his instant motion.  On December 31, 2020, Piles submitted an administrative request for compassionate release to the warden of FCI Fort Dix, and more than thirty days have since elapsed.  See Release Mot. at 15.  But as the government notes, that request sought release based on the COVID-19 outbreak at FCI Fort Dix and Piles's underlying health conditions.  Govt's Opp'n at 10 (citing Release Mot. at 15).  The regulations implementing § 3582(c)(1)(A) state that an inmate's administrative request (which forms the basis of the later release motion) "shall at a minimum contain," among other things, "[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration." 28 C.F.R. § 571.61(a).  In the past, this Court has "side[d] with the weight of precedent, which requires 'the inmate to present the same factual basis for the compassionate-release request to the warden.'"  United States v. Douglas, Crim. No. 10-171-4 (JDB), 2020 WL 5816244, at *2 (D.D.C. Sept. 30, 2020) (quoting United States v. Mogavero, No. 2:15-cr-74-JAD-NJK, 2020 WL

1853754, at *2 (D. Nev. Apr. 13, 2020)).  "To do otherwise would let inmates present one reason

for relief to BOP and another to the Court, denying BOP the chance to consider the request."

United States v. Shabazz, Crim. A. No. 17-43 (JDB), 2020 WL 7639545, at *2 (D.D.C. Nov. 24,

2020) (citing Douglas, 2020 WL 5816244, at *2).  Here, however, Piles's request did mention his

children, but did not explicitly list his parental duties as a reason for release.  See Release Mot. at

15 ("I have twin boys on the way to the world and has (sic) one year old daughter and a 7 year old

son I fear for my family.").  This inclusion might be enough to satisfy the exhaustion requirement.

See Douglas, 2020 WL 5816244, at *2 ("The exhaustion requirement should not be applied hyper-

technically, and the request to the warden need not be identical in detail or specificity to the motion

made in court" (quoting United States v. Knight, No. 1:15-CR-393, 2020 WL 4059886, at *2

(M.D.N.C. July 20, 2020)).  But the Court need not decide the exhaustion issue because, even

assuming Piles has properly exhausted his request,[1] his motion fails on the merits.[2]

　　　Although the Court is sympathetic to Piles's desire to assist his father, who recently

suffered a heart attack, and to help his partner care for his children, these do not qualify as

"extraordinary and compelling reasons" for release.  See Release Mot. at 5.  Commentary to the

Sentencing Commission's policy statement describes four "circumstances" that constitute

"extraordinary and compelling reasons" for a sentence reduction under § 3582(c), including the

---

[1] There is broad agreement that § 3582(c)(1)(A)'s "exhaustion requirement does not implicate [federal courts'] subject-matter jurisdiction."  United States v. Alam, 960 F.3d 831, 833 (6th Cir. 2020); see also United States v. Ayers, Crim. No. 8-364 (JDB), 2020 WL 2838610, at *1 n.1 (D.D.C. June 1, 2020) ("turn[ing] directly to the merits, which present a clear basis for denial [of a motion under § 3582(c)(1)(A)], rather than resolving the antecedent question of exhaustion").  The Court can thus, without exceeding its authority under Article III, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998), turn to the merits of Piles's claim without resolving the question of exhaustion.

[2] In his form motion, Piles checked a box requesting appointment of counsel.  See Release Mot. at 6.  "The Court may exercise its 'discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the interests of justice so require.'"  United States v. Evans, Crim. A. No. 18-103 (EGS), 2020 WL 3542231, at *3 n.3 (D.D.C. June 30, 2020) (quoting United States v. Richardson, No. 18-cr-507-LFL, 2020 WL 2200853, at *1 (E.D.N.C. May 6, 2020)).  Because the issues here are straightforward, the Court finds that the interests of justice do not require appointment of counsel to assist Piles with his § 3582(c) motion and hence denies his request.

following "Family Circumstances": (1) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."   U.S.S.G.   §   1B1.13 cmt. n.1(C).   These circumstances are "strictly circumscribed" and "do not encompass providing care to elderly parents," United States v. Goldberg, Crim. A. No. 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020), or serving as a second caregiver to minor children.  To be sure, the four listed circumstances also include "Other Reasons"—"extraordinary and compelling reason[s] other than, or in combination with" the elucidated reasons (medical condition, age, and family circumstances).  U.S.S.G. § 1B1.13 cmt. n.1(D).  But the fact that the policy statement does address family circumstances yet omits any mention of sick parents or assisting one's partner with childcare suggests that these circumstances are not covered.

While the D.C. Circuit has yet to weigh in, other Circuits have held that because U.S.S.G. § 1B1.13 has not been modified since the passage of the First Step Act, its definition of extraordinary and compelling reasons for release does not constrain courts entertaining compassionate release motions brought directly by defendants.  See, e.g., United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021); United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020); United States v. McCoy, 981 F.3d 271, 281 (4th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1181 (7th Cir. 2020).  This Court need not decide this issue because, even if courts are free to consider any reason that a defendant raises, Piles has failed to establish that his family circumstances qualify as extraordinary and compelling.  The Court may still "look[] to § 1B1.13 for guidance in the exercise of its discretion," United States v. Rodriguez, No. 16-CR-07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020), and that policy statement suggests that family

circumstances should warrant release only in extreme circumstances.  Piles's motion states that his father had a heart attack and needs transportation to medical appointments, and that he has two children and twins expected to arrive this month.  He also notes that his partner has no help with the children.[3]  Release Mot. at 5.  But many inmates have children and aging or sick parents; these circumstances are not extraordinary.  See Shabazz, 2020 WL 7639545, at *3 (finding that defendant's desire to care for elderly mother was not extraordinary and compelling and collecting similar cases).

Because the administrative request attached to Piles's pro se motion raised his medical conditions and the COVID-19 outbreak at FCI Fort Dix as grounds for release, the Court will also address whether these reasons are extraordinary and compelling.  See Release Mot. at 15.  They are not.  While Piles is morbidly obese (with a Body Mass Index of 47.9) and has asthma,[4] Medical Records [ECF No. 267-3] at 24, he declined the COVID-19 vaccine and then contracted the virus without complications.  See Gov't's Opp'n at 12–16.  To be sure, Centers for Disease Control and Prevention ("CDC") guidance states that obesity exacerbates the risk of severe outcomes from COVID-19, and asthma, if moderate or severe, "may" also increase that risk.  See People with Certain Medical Conditions, CDC (last updated Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  And FCI Fort Dix has had massive COVID-19 outbreaks, with active cases topping 800 in early January.  See George Woolston, 'Clear and Present Danger': U.S. Rep. Kim Calls for FCI Fort Dix Lockdown as Cases Top 800, Burlington Cnty. Times (Jan. 12, 2021),

---

[3] Piles's motion also states that the house where he lived with his mother was destroyed in a fire and she has now found a one-bedroom apartment.  While this information may clarify the details of Piles's release plan, it does not present an extraordinary and compelling reason for release.

[4] While Piles's motion stated he did not receive an inhaler, see Release Mot. at 10, his medical records show this has been remedied, see Medical Records at 79.

https://www.burlingtoncountytimes.com/story/news/2021/01/11/u-s-rep-kim-calls-fci-fort-dix-lockdown-cases-top-800/6632119002/.   FCI Fort Dix houses 2,761 inmates, and a staggering 1,817 (along with 47 staff members) have recovered from COVID-19; one inmate died from the virus.   See BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last visited Mar. 29, 2021).   BOP currently reports 2 active inmate cases and 42 active staff cases.   Id.

Despite Piles's medical conditions and the ongoing presence of COVID-19, he lacks extraordinary and compelling reasons for release because he refused the COVID-19 vaccine and subsequently contracted COVID-19 without serious complications.   Piles was offered the Pfizer-BioNTech vaccine on January 22, 2021 and rejected it.   See BOP Health Services Immunizations [ECF No. 267-2].   Courts have recognized—without apparent exception—that a defendant's refusal to be vaccinated substantially diminishes any argument for release premised on the risk posed by COVID-19.   See, e.g., United States v. Lohmeier, No. 12-cr-1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021).[5]   While Piles has the right to make his own healthcare decisions, because he "declined the opportunity to reduce his risk exposure to COVID-19 dramatically[,] he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."   Id.[6]

---

[5] See also, e.g., United States v. Poupart, Crim. No. 3:11cr116 (JBA), 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021) ("Evidence that a defendant has been offered the vaccine, whether he accepts it or not, demonstrates that he had the ability and opportunity to take measures to markedly reduce his risk of severe illness or death from COVID-19 while incarcerated."); United States v. Ervin, NO. 3:14-CR-000195-1, 2021 WL 848690, at *4 (M.D. Tenn. Mar. 5, 2021) ("Defendant's refusal of the COVID-19 vaccine seriously deflates any argument that he had regarding whether the risks posed to him by the COVID-19 virus (in consideration of his specific medical conditions) amounts to extraordinary and compelling reasons to justify his release."); United States v. McBride, Crim. A. No. 5:19-CR-000007-KDB-DCK-1, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) ("Defendant's refusal to take preventative measures undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison."); United States v. Gonzalez Zambrano, No. 18-CR-2002-CJW-MAR, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release.").

[6] The Court does not hold that declining vaccination must always preclude compassionate release predicated on the risk of COVID-19.   But here, the Court is aware of no potentially compelling reason—e.g., a bona fide religious objection—why Piles refused to be vaccinated.

Moreover, Piles tested positive for COVID-19 on February 18 and was apparently asymptomatic.  See Medical Records at 64, 74, 87.  This Court recently found that an inmate who had recovered from symptomatic COVID-19 nevertheless—"just barely—established extraordinary and compelling reasons because of his medical conditions, the threat of emerging variants, the risk of reinfection, FCI Fort Dix's poor record of controlling the virus, and the [ten-month] lapse in time since his last infection."  United States v. King, Crim. A. No. 18-318 (JDB), 2021 WL 880029, at *4 (D.D.C. Mar. 9, 2021) (denying compassionate release on other grounds).  But Piles was infected just last month and therefore will likely have some immunity for at least the next several months.  See Dr. Francis Collins, Study of Healthcare Workers Shows COVID-19 Immunity Lasts Many Months, NIH Director's Blog (Dec. 8, 2020), https://directorsblog.nih.gov/2020/12/08/study-of-healthcare-workers-shows-covid-19-immunity-lasts-many-months/ (citing findings that "acquired immunity from an initial COVID-19 infection offers protection against reinfection for six months or maybe longer").  Moreover, the outbreak at FCI Fort Dix is subsiding.  See supra at 5–6 (noting that total active cases are down to 44 from over 800 in January and only 2 out of 2,761 inmates have active cases).  The Court is hopeful that the risk of reinfection will continue to decrease, as FCI Fort Dix has begun vaccinating inmates and staff.  See BOP, COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/ (last visited Mar. 29, 2021).  To date, 184 staff members and 159 inmates have been fully vaccinated, id., and at least some level of natural immunity likely inures to the 66 percent of inmates who recovered from COVID-19.

Hence, although this Court does not wholly dismiss the risk of reinfection, Piles has not established extraordinary and compelling reasons for release in light of his refusal to be vaccinated and recent infection.

Even if Piles had demonstrated extraordinary and compelling reasons for his release, moreover, this Court may reduce his term of imprisonment only when doing so is consistent with any applicable sentencing policy and the balance of the factors under § 3553(a) favors release. See Ayers, 2020 WL 2838610, at *2; 18 U.S.C. § 3582(c)(1)(A)(i). But Piles's twenty-four-month sentence remains appropriate and not greater than necessary to comply with the purposes of sentencing. The "nature and circumstances of the offense and the history and characteristics of the defendant," along with "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to "afford adequate deterrence to criminal conduct," and to "protect the public from further crimes of the defendant" strongly weigh against reducing Piles's sentence. See 18 U.S.C. § 3553(a)(1)–(2).

Piles pled guilty to conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846. See Plea Agreement [ECF No. 117] at 1. Specifically, he played a serious role as a distributor in a large-scale conspiracy to distribute crack cocaine. See Gov't's Opp'n at 17. Prior to this crime, Piles had a long criminal history including convictions for assault, narcotics, and theft along with many arrests. See id. at 18. With a criminal history category of IV, his guidelines range was twenty-four to thirty months of imprisonment followed by three years of supervised release. See Statement of Reasons [ECF No. 229] at 1. Piles's sentencing memorandum emphasized that he suffered from obesity and asthma which made him "particularly susceptible to contracting COVID-19," and accordingly requested a sentence "which requires no further imprisonment." See Def.'s Mem. in Aid of Sentencing [ECF No. 220] at 3, 11. Nevertheless, on October 13, 2020, the Court sentenced him to twenty-four months of imprisonment followed by three years of supervised release. Judgment [ECF No. 228] at 1–3. As the government notes, "the Court reiterated the need for a strong, but fair, sentence in light of the

8

defendant's criminal history, his medical history, and the underlying criminal offense."  See Gov't's Opp'n at 18.  Reducing Piles's sentence now to time-served when he has served less than half of his sentence would be inconsistent with the § 3553(a) factors.  See, e.g, United States v. Dent, Case No. 10-20112 (DML), 2021 WL 872213, at *4 (E.D. Mich. Mar. 8, 2021) ("[N]otwithstanding an inmate's demonstration of elevated medical risk, this and other courts readily have denied compassionate release motions by defendants who were convicted of serious drug crimes and had served less than half of their custodial terms."); United States v. Daugerdas, 09-cr-581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (explaining that granting compassionate release when a defendant had served 37 percent of his sentence "would do little to 'promote respect for the law' or 'provide just punishment for the offense'").  Although Piles has no disciplinary record while at FCI Fort Dix, see Gov't's Opp'n at 18, in light of the large portion of his sentence remaining to be served, "section 3553(a)'s purposes of punishment require maintenance of the original prison term," United States v. Johnson, 464 F. Supp. 3d 22, 31 (D.D.C. 2020).[7]

For the foregoing reasons, it is hereby **ORDERED** that [266] Piles's motion for compassionate release is **DENIED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: March 29, 2021

---

[7] Due to the nature of Piles's offense, his criminal history, and his relatively short period of incarceration thus far, Piles might still be a danger to the community.  If U.S.S.G. § 1B1.13 applies to motions brought by defendants, see supra at 4, this could provide an additional reason to deny his motion.  See U.S.S.G. § 1B1.13 (setting forth the Sentencing Commission's policy statement, which requires—among other things—that the defendant's release not pose "a danger to the safety of any other person or to the community").